## A95A1373. WILSON v. MILES.
(463 SE2d 381)

Andrews, Judge.

We granted Wilson's application to appeal from the superior court's affirmance of the Department of Public Safety's declaration of him as an habitual offender. The issue to be determined is whether the legislature's 1985, 1987, and 1990 amendments of OCGA § 40-5-58 (a) imposed a requirement that three separate and unrelated transactions are required to supply the three "arrests and convictions" needed for an habitual violator declaration under OCGA § 40-5-58 (a). We find that three separate and unrelated transactions are required.

Wilson was arrested for DUI on May 29, 1993, and then arrested for DUI and attempting to elude a police officer on September 10, 1993. The Department, affirmed by the superior court, found the charges arising from these two arrests to be the requisite three arrests and convictions.

OCGA § 40-5-58 (a) currently states that "[a]s used in this Code section, 'habitual violator' means any person who has been *arrested and convicted* within the United States *three or more times* within a five-year period of time, as measured from the dates of previous arrests for which convictions were obtained to the date of the most recent arrest for which a conviction was obtained, of: (1) [c]ommitting any offense covered under Code Section 40-5-54 or Code Sections 40-6-391 through 40-6-395 [or comparable federal, other state, or local laws];[1] or (2) [s]ingularly or in combination, any of the offenses described in paragraph (1) of this subsection." (Emphasis supplied.)

Prior to the amendments of 1985, 1987, and 1990, former Ga. Code Ann. § 68B-308 (b) (1), now OCGA § 40-5-58 (a), defined an habitual violator as one who had been "*convicted* three or more times" within the requisite period. (Emphasis supplied.) In *Hardison v. Hall*, 162 Ga. App. 342 (291 SE2d 416) (1982), this Court determined that the statute "does not require that the 'three or more convictions' of the offenses enumerated therein arise out of 'separate and unrelated incidents.' Had the legislature intended otherwise, it could have inserted a qualifying phrase similar to the one utilized in former Code Ann. § 92A-457 (9) [which provided that, for declaring one an habitual violator for 15 or more moving minor traffic offenses, said offenses had to '*have been committed during separate and unrelated incidents*. . . .' (Emphasis supplied.)] Indeed, not only did the Gen-

---

[1] Homicide, feticide, or serious injury by vehicle; a felony involving the use of a motor vehicle; hit and run or leaving the scene of an accident; racing; using a motor vehicle to flee or attempt to elude an officer; fraudulent or fictitious use of or application for a drivers license; and DUI.

eral Assembly fail to add the qualifying phrase when enacting present Code Ann. § 68B-308 (b) (1) [OCGA § 40-5-58 (a)], it specifically omitted that phrase when it enacted present Code Ann. § 68B-308 (b) (2), [former OCGA § 40-5-58 (b), repealed by Ga. Laws 1987, pp. 1082-1089, dealing with 15 minor moving traffic offenses], corresponding to former Code Ann. § 92A-457 (9) in which the phrase appeared. Accordingly, we conclude that the legislature did not intend that the requisite number of convictions under Code Ann. § 68B-308 (b) (1) arise out of separate and unrelated incidents. Moreover, this construction of the statute effectuates the avowed purpose of the statute, which is not to define and punish 'recidivists' but to protect the citizens of this State from 'dangerous, negligent, and incompetent drivers.' " *Hardison v. Hall,* supra at 344.

In *Hardison v. Boyd,* 174 Ga. App. 71 (329 SE2d 198) (1985), this Court considered the issue of whether, under the three "convictions" language, the date of conviction or the date of violation should be used in determining the habitual violator status and determined that the date of the offense is the date to be used for this purpose. This opinion was issued on March 5, 1985.

House Bill 90, which contained the 1985 amendments to Title 40, including the added "arrest" language, was pending before the General Assembly during the time the *Boyd* case was being considered by this Court, appearing in the Journals of the chambers on February 5, 20, and 27.[2] The bill was approved on April 3, 1985. Ga. Laws 1985, pp. 758, 782. The caption of the bill, as passed, stated that its purpose, in pertinent part, was "to provide for and specify the time period within which previous offenses shall be considered for determining criminal punishment and administrative sanctions for violations of certain serious traffic offenses."

In 1987, when the General Assembly again amended OCGA § 40-5-58 (a), the caption stated that its purpose was, in pertinent part, "to change the definition of a habitual violator." Ga. Laws 1987, p. 1082. OCGA § 40-5-58 (a) was stricken in its entirety and the following inserted: "(a) As used in this Code section, 'habitual violator' means any person who has been arrested and convicted . . . three or more times within a five-year period of time, as measured from the dates of previous arrests for which convictions were obtained to the date of the most recent arrest for which a conviction was obtained, of: (1) [offenses listed in footnote 1]; (2) Operating a vehicle after cancellation, suspension, or revocation of his operator's license under Code Section 40-5-121 or any law of this state . . . ; or (3) *Singularly or in*

---

[2] 1985 Journal of the House, Vol. I, pp. 613-618; Vol. II, pp. 1650-1654; 1985 Journal of the Senate, Vol. I, pp. 1293-1299.

*combination, any of the offenses described in paragraph (1) or (2) of this subsection, both inclusive.*" (Emphasis supplied.) Ga. Laws 1987, pp. 1082, 1086.

Prior to this 1987 amendment, the emphasized language had been part of former Ga. Code Ann. § 68B-308 (b) (2), which became OCGA § 40-5-58 (b) and dealt with 15 minor moving traffic offenses. With the exception of this emphasized language which was appended to OCGA § 40-5-58 (a), the remainder of former section 68B-308 (b) (2) was repealed by the 1987 amendment.

In 1990, the General Assembly again amended Title 40 and other provisions dealing with driving. Ga. Laws 1990, pp. 2048-2336. The caption stated the General Assembly's purpose was "to particularly change provisions relative to issuance, suspension, revocation, and reinstatement of drivers' licenses; to provide for definitions. . . ." Ga. Laws 1990, p. 2048.

Chapter 5 of Title 40 was stricken in its entirety and replaced. OCGA § 40-5-58 (a), as amended, defined "habitual violator" as one "arrested and convicted . . . three or more times within a five-year period . . . of: (a) [offenses listed in footnote 1]; (2) *[s]ingularly or in combination, any of the offenses described in paragraph (1) of this subsection.*" (Emphasis supplied.)

1. In interpreting statutes, "the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). " 'To ascertain the intention of the legislature, after examining the words of the Act itself, it is necessary to take into view every fact and circumstance that influenced its passage. We must consider what the law was before; the mischiefs against which the law did not provide; the nature of the remedy proposed; the true reason of the remedy.' " *McGuire v. McGuire*, 228 Ga. 782, 785 (187 SE2d 859) (1972); *City of Roswell v. City of Atlanta*, 261 Ga. 657 (1) (410 SE2d 28) (1991).

2. " '(I)t is well settled in this jurisdiction that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it; that they are to be construed in connection and in harmony with the existing law; and that their meaning and effect will be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and the decisions of the courts.' [Cits.]" *Wigley v. Hambrick*, 193 Ga. App. 903, 904-905 (4) (389 SE2d 763) (1989).

3. The Georgia Constitution prohibits the passage of a bill which refers to more than one subject matter or contains matter different from that expressed in the title of the bill. Ga. Const., Art. III, Sec. V, Par. III; *Lutz v. Foran*, 262 Ga. 819, 820 (3) (427 SE2d 248) (1993).

In construing legislation, "nothing . . . is more pertinent, towards ascertaining the true intention of the legislative mind in the passage

of the enactment, than the legislature's own interpretation of the scope and purpose of the act, as contained in the caption. The caption of an act of the legislature is properly an index to the contents of the statute as construed by the legislature itself, — a summarizing of the act, made right at the time when the discussion of every phase of the question is fresh in the legislative mind." *Wimberly v. Ga. Southern &c. R. Co.*, 5 Ga. App. 263, 265 (2) (63 SE 29) (1908); *Sovereign Camp Woodmen of the World v. Beard*, 26 Ga. App. 130, 131 (105 SE 629) (1921).

4. Applying these precepts to the evolution of OCGA § 40-5-58 (a), we conclude that the legislature's purpose in 1985 was to eliminate any confusion as to the method of measurement of the time between violations for purpose of the habitual violator designation. This legislative concern is evidenced by the pendency of *Hardison v. Boyd,* supra, during the period of the 1985 legislative session as well as the caption of the bill enacted which identified the "time period within which previous offenses shall be considered" as the primary concern.

We cannot, as the Department would have us do, interpret the 1985 amendment as evidencing the legislature's intent that each charge arising from an arrest can be considered for purposes of habitual violator status. To so interpret the act would mean that an individual driving under the influence who hits and kills another with his vehicle and then flees the scene would, on these three charges alone, be considered an habitual violator. If this is the desire of the legislature, additional amendment of the statute is required. See *Bowman v. Griffith*, 204 Ga. App. 851 (420 SE2d 795) (1992).

The primary indicia of the legislature's intent, however, is supplied by the 1987 and 1990 amendments. By adding the phrase "singularly or in combination" as subsection (3) of OCGA § 40-5-58 (a) in 1987, the legislature evidenced its intent that "arrested and convicted" within the five-year period mean that the charges "singularly or in combination" must result from three separate incidents, regardless of the number of enumerated offenses charged during any singular incident. This is consistent with the caption to the 1987 amendment, indicating the legislature's intent to "change the definition of a habitual violator."

The 1990 amendment, captioned as a change in the provisions regarding revocation, deleted the subsection making an arrest and conviction for operating a vehicle after cancellation, suspension or revocation of a license a basis for an arrest and conviction under the habitual violator section. In 1990, the legislature left intact the "singularly or in combination" language.

Therefore, we must conclude that three separate and unrelated transactions are required for designation as an habitual violator.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 25, 1995.

*Hudson & Montgomery, David R. Montgomery*, for appellant.
*Michael J. Bowers, Attorney General, Daryl A. Robinson, Senior Assistant Attorney General, Lori V. Winkleman, Assistant Attorney General*, for appellee.